c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LIMEKILN DEVELOPMENT, INC., Plaintiff | CIVIL ACTION NO. 1:20-CV-00145 |
| VERSUS | JUDGE DRELL |
| XTO ENERGY INC., Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court are two Rule 12(b)(6) Motions to Dismiss (ECF Nos. 9, 24) filed by Defendant XTO Energy, Inc. ("XTO"). XTO asserts Plaintiff Limekiln Development, Inc. ("Limekiln") failed to strictly comply with statutory requirements under La. R.S. 30:103.1, *et seq.*, and therefore, fails to state a claim for relief. ECF Nos. 9, 24. Limekiln opposes. ECF Nos. 13, 26.

Limekiln's Complaint (ECF No. 1), as amended (ECF No. 19), states a plausible claim for relief against XTO. XTO's Rule 12(b)(6) Motions to Dismiss (ECF Nos. 9, 24) should be DENIED.

I. Background

Limekiln filed a Complaint (ECF No. 1) under this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Limekiln asserts a state law claim for forfeiture under La. R.S. 30:103.2 as the owner of certain unleased oil and gas interests.

Limekiln is a Louisiana corporation with its principal place of business in in Natchitoches, Louisiana. ECF No. 1 at 1. XTO is a Delaware corporation with its principal place of business in Spring, Texas. *Id.* Limekiln asserts complete diversity of citizenship exists between the parties, and that the amount in controversy exceeds $75,000. *Id.* at 1-2.

Limekiln owns the South Half of the Northwest Quarter (S/2 of NW/4) (the "Property") of Section 15, Township 10 North, Range 10 West, in Natchitoches Parish (the "Section"). *Id.* at 2. The mineral rights in the Property are unleased. *Id.*

Louisiana Office of Conservation Order No. 1165-K-9 ("Order 1165-K-9") created five additional drilling and production units for the Haynesville Zone, Reservoir A, in the San Miguel Creek Field, Natchitoches Parish. *Id.* This includes the HA RA SUKK (the "Haynesville Unit"), a unit composed entirely of the lands within the Section, including the entirety of the Property. *Id.*

Limekiln asserts that, on August 21, 2011, XTO spudded the XTO Energy, Inc. – HA RA SUKK; Powell 15H No. 1 (the "Haynesville Well"), as a unit well for the Haynesville Unit. *Id.* at 3. The Haynesville Well was completed on April 12, 2012 and produced from the Haynesville Unit until August 2014. *Id.*

Louisiana Office of Conservation Order No. 1165-M ("Order 1165-M") created a drilling and production unit for the Hosston Zone, Reservoir A, in the San Miguel Creek Field, Natchitoches Parish, designated HOSS RA SUA (the "Hosston Unit"). The Hosston Unit is composed entirely of the lands within the Section, including the entirety of the Property. *Id.* at 3. Order 1165-M designated XTO as the unit operator

and designated the XTO Energy, Inc. – HOSS RA SUA; Powell 15H No. 1 Well, Serial No. 243639 (the "Hosston Well") as the unit well for the Hosston Unit. *Id.*

The Haynesville Well was recompleted in the Hosston formation in October of 2014 and was designated as the unit well for the Hosston Unit. *Id.* at 4. Limekiln collectively refers to the Haynesville Well and the Hosston Well as the "Unit Well." *Id.*

Citing La. R.S. 30:103.1, Limekiln alleges an operator is required to send specific reports to owners of unleased oil or gas interests within a drilling unit producing oil or gas, or both, upon which the operator has no valid oil, gas or mineral lease. *Id.* Limekiln asserts it made written request by certified mail for such reports for the Unit Well. *Id.* at 4-9. Limekiln contends XTO failed to provide the initial or quarterly reports in the format and detail required by La. R.S. 30:103.1. *Id.* Limekiln asserts XTO also failed to provide information regarding quarterly operating costs and expenses, or funds expended to enhance or restore production of the Unit Well. *Id.* Despite written requests, Limekiln alleges XTO did not provide sufficient reports and statements within 90 days of completion of the Unit Well. *Id.*

Limekiln asserts XTO's responses do not comply with La. R.S. 30:103.1. *Id.* at 9-10. Limekiln seeks forfeiture under La. R.S. 30:103.2 of XTO's rights to demand contribution from it as owner of the unleased oil and gas interest for the costs of the drilling operations for the Unit Well. *Id.* at 10-11. Limekiln further asserts that,

under "La. R.S. 30:10(3),"[1] it is entitled to the Property's pro-rata share of the proceeds – 12.4592031% – of the sale of unit production, without offset by XTO for any proportion of the costs of drilling operations of the Unit Well. *Id.* at 12. Limekiln seeks a money judgment for its pro-rata share of the proceeds, as well as legal interest, expenses, costs, and attorney's fees. *Id.* at 13.

Limekiln amended to add a claim for accounting and for payment of its share of unit proceeds. ECF No. 19 at 2. In addition to its forfeiture claim, Limekiln seeks an order for XTO to provide a proper accounting of the production, proceeds, and costs for the Unit. *Id.* at 5.

XTO filed Rule 12(b)(6) Motions to Dismiss (ECF Nos. 9, 24), seeking dismissal of Limekiln's original Complaint (ECF No. 1), and as amended (ECF No. 19). In support, XTO references documents attached to Limekiln's original Complaint (ECF No. 1). *See* ECF Nos. 1-2 through 1-14, 9-1.[2]

Limekiln opposes. ECF Nos. 13, 26. Limekiln submits in support the Declaration of W. Drew Burnham ("Burnham") (ECF No. 13-1) attesting to documents of record in other cases for the Court's reference. ECF No. 13-1.

---

[1] Limekiln appears to be referencing La. R.S. 30:10(A)(3) which provides for the "pro rata share of the proceeds of the sale of production" to an unleased mineral owner for his tract's share of the unititzed production.

[2] When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (citation omitted). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

4

## II. Law and Analysis

### A. Standards governing the Rule 12(b)(6) Motions to Dismiss.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement, will not stand. *Id.* Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. *Id.* at 679.

B.     Louisiana's Well Cost Reporting Statutes

La. R. S. 30:103.1 provides for an unleased owner in a compulsory unit[3] to obtain information from the operator about unit well costs and revenue of a unit well. La. R.S. 30:103.1. Under Section 103.1,

> A. Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
> (1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.
> (2) After establishment of production from the unit well, quarterly reports which shall contain the following:
> (a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.
> (b) The price received from any purchaser of unit production.
> (c) Quarterly operating costs and expenses.
> (d) Any additional funds expended to enhance or restore the production of the unit well.

La. R.S. 30:103.1(A). The operator or producer shall report the required information to the owner of the unleased interest within thirty days after such information is obtained by the operator or producer, or in the next quarterly report, whichever due date is later. La. R.S. 30:103.1(B).

> Reports shall be sent by certified mail to each owner of an unleased oil or gas interest who has requested such reports in writing, by certified mail addressed to the operator or producer. The written request shall contain the unleased interest owner's name and address. Initial reports shall be sent no later than ninety calendar days after the completion of the well. The operator or producer shall begin sending quarterly reports within ninety calendar days after receiving the written request,

---

[3] Forced pooling "allows the government to authorize a single operator to drill for oil and gas even when all parties possessing oil and gas interests in the drilling area have not agreed to go forward." *TDX Energy, L.L.C. v. Chesapeake Operating, Inc.*, 857 F.3d 253, 256 (5th Cir. 2017).

6

> whichever is later, and shall continue sending quarterly reports until cessation of production.

La. R.S. 30:103.1(C). Thus, reports must be sworn, detailed, and itemized, and must be sent by certified mail. La. R.S. 30:103.1 (A) and (C).

Section 103.2 provides that:

> Whenever the operator or producer permits ninety calendar days to elapse from completion of the well and thirty additional calendar days to elapse from date of receipt of written notice by certified mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well.

La. R.S. 30:103.2.

### C. Limekiln states a plausible claim for relief against XTO under Louisiana's Well-Cost Reporting Statutes.

XTO seeks dismissal of Limekiln's forfeiture claims under La. R.S. 30:103.2 based on its assertion that Limekiln failed to strictly comply with the forfeiture statute's requirements. ECF Nos. 9 at 5, 9-1 at 19, 24 at 1-2. XTO claims Limekiln's request for well cost reports did not specify the land Limekiln claimed it owned. ECF No. 9-1 at 11, 24 at 1. XTO asserts it provided an initial report and supplemental report, but was met with a default notice by Limekiln which XTO alleges did not explain why the reporting was deficient. ECF Nos. 9-1 at 15-19, 24 at 1. XTO argues the statute should be strictly construed to require Limekiln to comply with the statutory prerequisites to a forfeiture claim. *Id.* at 2. XTO contends Limekiln's claim to recover well costs fails as a matter of law. ECF Nos. 9-1 at 19, 24 at 1-2.

7

XTO relies on *Miller v. J-W Operating Co.*, 2017 WL 3261113 (W.D. La. Jul. 28, 2017), asserting Limekiln failed to strictly comply with La. R.S. 30:103.1 in specifying the land it claimed to own. ECF No. 9-1 at 11-13. In *Miller*, this Court granted partial summary judgment in favor of J-W Operating Co., finding that Miller's letters were insufficient as a matter of law to trigger the La. R.S. 30:103.1 reporting requirements. *Miller*, 2017 WL 3261113, at *1.

In *Miller*, the unleased owner of mineral interests within a drilling unit wrote to operator J-W Operating Co. to request financial reports. *Id.* In her first letter, Miller identified herself as the unleased owner of land in Bossier Parish on which J-W Operating Co. operated an oil well. *Id.* She requested well costs and production reports. *Id.* Though she identified her name and address, Miller did not identify the property that she owned or the drilling unit she believed the property to be in. *Id.* Miller's second letter also failed to identify the information about her interest or property location. *Id.* Miller's third letter identified a five-acre tract she owned. *Id.* J-W Operating Co. responded to Miller with costs and production reports and a check for her share of production, minus her share of drilling costs. *Id.* Miller sued alleging J-W Operating Co. forfeited its right to deduct well costs because it failed to timely send the financial reports. *Id.*

This Court disagreed, acknowledging that the well-cost reporting statute does not specify what information must be contained in an unleased owner's request for financial reports. However, this Court found it unreasonable to impose a potentially harsh penalty on an operator for failing to send reports where the request fails to

identify the unleased interest at issue. *Id.* at 5. There, this Court found that J-W Operating Co.'s duty was not triggered until the third request identified the plaintiff's interest. *Id.*

XTO argues that, in *Miller*, as a matter of law, the plaintiff's first two letters stating her name and address "were insufficient to put Defendant on notice of her unleased ownership because they did not provide information about the land Plaintiff owned." ECF No. 9-1 at 12 (citing *Miller*, 2017 WL 3261113, at *4).

XTO argues federal courts have imposed strict compliance upon owners with respect to requests for reports. ECF No. 9-1 at 13 (citing *Browning*, 848 F.Supp. at 1246; *M&N Res. Mgmt.*, 2017 WL 8809775 at *7). XTO claims that, as in *Miller*, Limekiln's certified letter failed to identify the land Limekiln claimed to own. *Id.* XTO admits Limekiln included in the subject line the name of the well it claimed to own, but argues Limekiln failed to specify its property interests. *Id.* XTO argues the request fails to comply with La. R.S. 30:103.1. *Id.* XTO further argues Limekiln's email containing a description of the land it owns was insufficient and non-compliant as a matter of law and cannot be subsumed into the subsequent certified mail letter. *Id.* at 14.

Limekiln responds that XTO's arguments are not supported by the statutes themselves or the jurisprudence. ECF No. 13 at 5. Limekiln further contends XTO's misapplication of the jurisprudence seeks to create novel hoops inconsistent with the language of the statutes. *Id.* Limekiln asserts XTO has been aware of Limekiln's ownership within the Unit since its inception, and the inception of the Haynesville

9

Unit before it. *Id.* at 6 (citing ECF Nos. 1-2, 1-3 referencing attached survey plats filed with the Office of Conservation), 15. Limekiln contends that it identified itself as an owner within Section 15, identified the Unit Well for which it sought information under Section 103.1, and identified Limekiln's name, address, and taxpayer identification number. *Id.* at 6, 14.

Limekiln argues that its Section 103.1 demand and Section 103.2 default notice strictly complied with all statutory requirements. *Id.* at 14-27. Limekiln further asserts that because Section 103.1's and Section 103.2's requirements of unleased owners are clear and unambiguous, it is inappropriate to add extra-statutory requirements that XTO seeks to add. ECF No. 13 at 14.

Limekiln contends XTO's reliance on *Miller* is misplaced. ECF No. 13 at 15. Limekiln asserts that the unleased owner in *Miller* simply demanded the operator identify whatever interest the owner may have in any of the operator's units. *Id.* (citing *Miller*, 2017 WL 326113, at *3). Miller "did not identify the land she owned, the drilling unit where the land was located, or the well that Defendant was operating." *Id.* (quoting *Miller*, 2017 WL 326113, at *3). Limekiln further argues *Miller* does not support XTO's proposition that a Section 103.1 notice requires a "property description." *Id.* Unlike the unleased owner in *Miller*, Limekiln contends that its notice provided sufficient information to enable XTO to comply with its reporting obligations for the Unit Well and consistent with the requirements of the Section 103.1. *Id.* at 16-17.

10

Limekiln argues XTO sent only cursory unit production and cost information, some unsworn, in response to its requests. ECF No. 26 at 2. Limekiln maintains that XTO's assertions – that Limekiln should have included more detailed information about its property and should have instructed XTO about the deficiencies – are extra-statutory. ECF Nos. 13 at 17-18, 26 at at 3. Limekiln states that the statute requires unit wide, not tract-based, reporting which should be the same regardless of the tract owned by claimant. ECF Nos. 13 at 17, 26 at 3. Limekiln contends the statute provides for no variance dependent on various unleased owners within a unit. ECF No. 13 at 17 (citing La. R.S. 103.1).

Limekiln posits that, by identifying the unitized section, township, and range in which it is an unleased owner, as well as the name of the Well for which it is seeking reports, it's 103.1 notice gives sufficient information for XTO to produce the requested reports. ECF No. 13 at 18. According to Limekiln, its property has always been shown on XTO's plats for the units, as required by Louisiana law. ECF No. 13 at 19. Limekiln asserts XTO is required to identify the various owners within a unit at different stages of the formation of a unit, and submit them in a proposed unit plat, as well as a survey plat, with the owners' various acreages. *Id.* (citing ECF No. 1-14 reflecting XTO's unit survey showing Limekiln's acreage in the Unit). Regardless, Limekiln contends that the statute requires XTO to report the costs and revenue of a unit well, not costs and revenue allocable to any specific tract. *Id.* at 20. And Limekiln argues that any particular owner's property description is

completely irrelevant to the statute and would not change reporting of costs and revenue reporting specific to the unit. *Id.*

Here, Limekiln's Complaint (ECF No. 1), as amended (ECF No. 19), including its attached exhibits, alleges that on August 13, 2019, Limekiln sent an email to XTO identifying itself as the owner of "80 acres in the South Half of the Northwest Quarter of Section 15, Township 10 North, Range 10 West, Natchitoches Parish, Louisiana." *Id.* at 4-5. Limekiln's email stated:

> Our company, Limekiln Development, Inc., is the owner of 80 acres in the South Half of the Northwest Quarter of Section 15, Township 10 North, Range 10 West, Natchitoches Parish, Louisiana. Apparently your company has been exploring and producing minerals in this section. I pulled our file and it doesn't look like we are under lease. We had a letter agreement with Petrohawk in 2010 that they backed out of. I'm not sure how we let this one slip through the cracks. Please send me expense sheets on the wells, and the other pertinent information such as unit survey, division orders and such.
>
> Please consider this letter as a demand for payment of all royalties owning to Limekiln Development, Inc. without further delay.
>
> I hereby certify that these minerals are owned by the following:
> Limekiln Development, Inc.
> 100 St. Clair Ave.
> Natchitoches, LA 71457
> Tax ID: 72-1249033

ECF Nos. 1 at 4-5, 1-4 at 2, 9-1 at 6. Limekiln asserts it requested reports for the expenses of any and all wells drilled in the Section and for other pertinent information. ECF No. 1 at 5.

On August 14, 2019, XTO responded twice, once stating: "We will comply with the applicable statutes in regard to your demand." ECF Nos. 1 at 5, 1-5 at 2, 9-1 at 6. Within hours, XTO also replied: "[p]ursuant to Louisiana Revised Statute 30:103.1

12

(see attachment) please submit your demand in writing by certified mail to my attention." ECF Nos. 1 at 5, 1-5 at 3, 9-1 at 6. Attached was a copy of La. R.S. 30:103.1. ECF No. 1-5 at 4.

Limekiln alleges that it made the reporting requests by certified mail to XTO on August 14, 2019. ECF No. 1 at 5. Limekiln's request – now by certified mail – stated "[p]ursuant to La. R.S. 30:103.1, we request reports and statements associated with the above referenced well operated by XTO Energy, Inc." ECF Nos. 1 at 5, 1-6 at 2, 9-1 at 7. Limekiln referenced the Unit Well, specifically "Powell 15, Well #243639, S15, T10N, R10W, Natchitoches Parish, LA OWNER Limekiln Development, Inc.." ECF No. 1-6 at 2, 9-1 at 7. Limekiln requested reports and statements under La. R.S. 30:103.1 regarding the specific Unit Well and certified Limekiln's name, address, and taxpayer identification number. *Id.* Limekiln demanded payment of all royalties owing to Limekiln. *Id.*

Limekiln alleges XTO responded via certified mail dated September 16, 2019 with a sworn statement purportedly made under La. R.S. 30:103.1. ECF No. 1 at 5. Limekiln alleges the letter referenced an enclosed "sworn, detailed, itemized statement" for the Unit Well, including an attached affidavit attesting that the itemized statement of costs and revenue was true and correct. ECF Nos. 1-5 at 5, 1-7 at 2-14, 9-1 at 7. Limekiln alleges that included with the "itemized statement" was a printed spreadsheet not in the form required by La. R.S. 30:103.1 and not included in the sworn itemized statement referenced in the affidavit. *Id.* at 6.

13

Limekiln alleges that numbers contained in the spreadsheet, including a "Revenue" of $5,442,782.95, do not reconcile with the sworn revenue total of $4,387,622.48 included on the sworn "itemized statement." *Id.* at 6-7. Limekiln sought clarification of the discrepancies through email exchanges with XTO. *Id.* at 7. Limekiln asserts XTO explained in a September 17, 2019 email that "the attached information supplements the information mailed yesterday" and that "[t]he Deductions on the attached spreadsheet may include royalty payments to third parties that should not be included as a Deduction." ECF Nos. 1 at 7, 1-8 at 2. XTO stated this would "make the Revenue higher than shown," but that the "well has not reached payout and [Limekiln] is therefore not entitled to any revenue at this time." *Id.* Limekiln asserts it received no further clarification. ECF No. 1 at 7.

On September 20, 2019, Limekiln inquired as to a discrepancy it noted on the itemized statement reflecting Revenue Totals of $4,387,622.48 (ECF No. 1-7 at 4) compared to the spreadsheet reflecting Revenue Totals of $5,442,782.95 (ECF Nos. 1-7 at 6, 1-8 at 7). ECF No. 1-9 at 2.

On September 20, 2019, XTO responded via email, explaining:

> The statement I sent you showed the revenue after deductions. The second revenue statement I sent shows production volume, price, gross value, severance taxes, deductions and revenue. The attached statement replaces those previously sent due to prior month adjustments from 11/30/2018.
>
> The well has not reached payout as of this date.

ECF No. 1-10 at 2.

14

Limekiln asserts XTO sent certified mail on that same date with a "revised, sworn, detailed, itemized statement" including the same "itemized statement" with the same costs previously sent. ECF No. 1 at 7, 1-11 at 2-6, 9-1 at 7.  Included was an itemized statement with the same figures as previously sent, and a spreadsheet reflecting Revenue for the Unit Well totaling $5,551,322.92.  ECF Nos. 1 at 7, 1-11 at 6.  Limekiln alleges XTO did not explain revisions from the previous spreadsheet or why the "Deduction" amounts remained the same.  ECF No. 1 at 8.

On November 12, 2019, Limekiln sent certified mail to XTO asserting XTO's failure to comply with the requirement under La. R.S. 30:103.1 to provide sworn, detailed, and itemized statements, and noting the Section 103.2 forfeiture penalties for such failure.  ECF Nos. 1 at 8-9, 1-12 at 2-3, 9-1 at 8.  Limekiln also identified itself as the unleased mineral owner of the Unit Well.  ECF Nos. 1 at 8-9, 1-12 at 2-3.  Limekiln alleges 30 days have passed from XTO's receipt of the Section 103.2 notice.  ECF No. 1 at 9.  On November 21, 2019, XTO responded via certified mail, by resending its September 16, 2019 letter and included statement, and its September 20, 2019 letter and included revised statement.  ECF Nos. 1 at 9, 1-13 at 2, 9-1 at 9.  Limekiln alleges XTO's failed to send statutorily compliant and timely "sworn, detailed, and itemized statements," and fails to continue to provide annual and quarterly reports.  ECF No. 1 at 8-13.

XTO further argues that Limekiln's "purported default notice" fails to strictly comply with Section 103.2.  ECF No. 9-1 at 15.  XTO contends that Limekiln must do more than merely state that "unspecified compliance has occurred."  *Id.*  XTO

15

argues Limekiln must state why it believes the reports were insufficient. *Id.* XTO contends that, just as in *Miller* and *M&N Res. Mgt.*, the letter must give detail sufficient to allow it the opportunity to cure the alleged deficiencies in its reporting. *Id.* at 15-16.

XTO asserts this is analogous to Louisiana courts's application of La. R.S. 31:137 – a separate penal statute requiring a default notice before a mineral lessee can seek penalties. *Id.* XTO contends Louisiana courts have held that this similar default notice statute requires specific information to reasonably alert the lessee and allow for an appropriate investigation of the problem by the lessee. *Id.* at 17. Moreover, XTO contends this Court has found that it "does not understand that the Well Costs Reporting Statute was intended as a 'gotcha' statute." *Id.* (citing *B.A. Kelly Land Co.*, 2019 WL 6542407, at *5). XTO argues that had Limekiln provided the level of specificity contained in its Complaint in its default notice, XTO would have been afforded a meaningful opportunity to cure the alleged problems. *Id.* at 19.

It is undisputed by the parties that the statute requires a two-step notification requirement on behalf of the unleased owner. *See* <u>*Miller*</u>, 2017 WL 3261113, at *5 (noting first the unleased owner must sent a written request for a sworn, detailed, itemized statement of operating costs under Section 103.1; and second must send written notice under Section 103.2 calling attention to the failure to comply with Section 103.1); *see also Adams v. Chesapeake Operating, Inc.,* 561 Fed.Appx. 322, 325 (5th Cir. 2014) (observing the two-step notification requirement on unleased owner). An unleased owner must comply with the two-step notification before

16

invoking claims under La. R.S. 30:103.1 and 30:103.2. *See Adams*, 561 Fed. Appx. at 325 (citing La. R.S. 30:103.2 and *White v. Phillips Petroleum Co.*, 232 So.3d 83, 90-91 (La. App. 3 Cir. Jan. 15, 1970)).

Since the forfeiture of the operator's right to recover unit well costs is penal in nature, courts apply it only when the unleased owner has strictly complied with the request for the sworn, detailed, and itemized statements under La. R.S. 30:103.1. *See Browning v. Exxon Corp.*, 848 F.Supp. 1241, 1246 (M.D. La. 1994), *aff'd* 43 F.3d 668 (5th Cir. 1994); *see also M&N Resources Management, L.L.C. v. Exco Operating Co., L.P.*, 2017 WL 8809775, at *7 (W.D. La. Dec. 13, 2017) (citing *White v. Phillips Petroleum Co.*, 232 So.2d 83, 90 (La. App. 3 Cir. 1970)). "An operator's failure to comply with the reporting requirements imposes a harsh penalty: the operator forfeits his right to contribution for expenses from the unleased owner. Because this penalty is harsh, §§ 103.1 and 103.2 are strictly construed by courts." *B.A. Kelly Land Co., LLC v. Aethon Energy Operating LLC*, 5:18-CV-01243, 2019 WL 5021267, at *3–4 (W.D. La. Oct. 8, 2019), *reconsideration denied*, 5:18-CV-01243, 2019 WL 6542407 (W.D. La. Dec. 4, 2019) (citing *Miller,* 2017 WL 3261113, *3).[4] "[T]he law demands that an owner who wishes to take advantage of [the statutes] must comply *to the letter*." *Id.* (citing *M&N Resources Management, LLC v. Exco Operating Co., LP*, No. 14-0238, 2017 WL 8809775 at *7 (W.D. La. December 13, 2017) (emphasis added)).

---

[4] The first request must be answered within 90 days of receipt of the request, and the second notice of failure to comply must be answered within 30 days of receipt of the request. Miller, 2017 WL 3261113, at *5.

17

Although the parties agree there is a two-step noticing requirement, they dispute whether the unleased owner is required to include a property description in the required notices. However, there is little jurisprudence interpreting Louisiana's well cost reporting statute. And no case cited specifically elucidates what the statute requires in a Section 103.2 default notice from the unleased owner other than that the owner must send a second written notice by certified mail calling attention to the operator's failure to comply with Section 103.1. The operator has 30 days to cure its mistake. *See Adams v. Chesapeake Operating, Inc.*, 2013 WL 1193716, at *5 (W.D. La. Mar. 21, 2013), *aff'd,* 561 Fed.Appx. 322 (5th Cir. 2014).

The plain language of the statute requires an unleased owner who requests well cost reporting to make such request "in writing, by certified mail addressed to the operator or producer." La. R.S. 30:103.1(C). "The written request shall contain the unleased interest owner's name and address." *Id.* The statute contains no other requirements on the unleased owner for the request. Section 103.2 provides that a default notice from owner or owners of unleased oil and gas interest must be "written notice by certified mail" which "call[s] attention to [the operator's] failure to comply with the provisions of R.S. 30:103.1." La. R.S. 30:103.2.

Here, the Court must accept Limekiln's factual allegations as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). Limekiln states a plausible claim for relief for forfeiture under La. R.S. 30:103.2. Unlike the unleased owner in *Miller,* Limekiln's factual allegations establish that it strictly complied with Section 103.1's statutory requirements and identified the drilling unit its property

18

was in. *See* La. R.S. 30:103.1; *Miller*, 2017 WL 326113, at *3 (finding owner's demand did not trigger Section 103.1 reporting where the unleased owner described herself as the owner of interests in Bossier Parish, but did not identify the interest she owned *or* the unit in which the interest was located).

Also, Limekiln's Section 103.2 notice via certified mail specifically notified XTO that it failed to send Limekiln "the necessary, sworn, detailed, and itemized statements as required by La. R.S. 30:103.1" and of the Section 103.2 forfeiture penalties for such failure. ECF Nos. 1 at 8-10, 1-12 at 2-3. Limekiln also identified itself as the unleased mineral owner of the Unit Well. ECF Nos. 1 at 8-9, 1-12 at 2-3. At this stage of the proceedings, Limekiln's pleaded factual allegations sufficient to assert recovery against XTO for forfeiture under La. R.S. 30:103.2.

## III. Conclusion

Because Limekiln's Complaint (ECF No. 1), as amended (ECF No. 19), states a plausible claim for relief against XTO under La. R.S. 30:103.2;

IT IS RECOMMENDED that XTO's Rule 12(b)(6) Motions to Dismiss (ECF No. 9, 24) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Friday, February 5, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE